515 A.2d 108

John A. Newcomer, Appellant *v.* Civil Service Commission of Fairchance Borough and Fairchance Borough, Appellees.

Argued March 11, 1986, before Judges MACPHAIL, DOYLE and BARRY, sitting as a panel of three.

*John M. Purcell, Davis & Davis,* for appellant.

*Thomas A. Bowlen,* with him, *A. J. Kuzdenyi,* for appellees.

OPINION BY JUDGE DOYLE, September 18, 1986:

John A. Newcomer (Appellant) appeals from an order of the Court of Common Pleas of Fayette County, Pennsylvania which dismissed his appeal from the decision of the Civil Service Commission of the Borough of Fairchance (Commission) affirming Appellant's removal from the Fairchance Borough Police Department by the Borough Council.

On October 25, 1984, after completing his patrol duties at about 12:00 midnight, Appellant returned to the police office in the Borough Building. Shortly thereafter, Bill Price, a borough ambulance corps volunteer, approached Appellant with a can of aerosol spray in his hand. These two men had frequently engaged in "horseplay" consisting of grabbing, shoving and spraying one another with cans of air freshener. As Price entered the police office on this occasion, Appellant drew his loaded service weapon and pointed it at Price. Price immediately dropped the aerosol can and left the room. As a result of this incident, the Borough Council removed Appellant from further employment with the

police force, pursuant to Section 1190 of The Borough Code (Code),[1] 53 P.S. §46190, for violating Pennsylvania law and engaging in conduct unbecoming an officer. Pursuant to Section 1191 of the Code,[2] 53 P.S. §46191, Appellant demanded and was granted a hearing before the Commission. Following such hearing, his removal was affirmed. Appellant appealed this action to the Fayette County Court of Common Pleas, which held a brief *de novo* hearing and accepted into evidence the transcript of the testimony before the Commission. The court then affirmed the removal.

Before this Court, Appellant raises three arguments. First, he asserts that he was deprived of a property interest in his job without due process of law, second he asserts that the charges upon which he was removed were not supported by substantial evidence in the record, and third, he argues that even if his conduct did warrant disciplinary action, the penalty of removal was

---

[1] Act of February 1, 1966, P.L. (1965) 1656, *as amended*. This section provides, in pertinent part:

No person employed in any police or fire force of any borough shall be suspended, removed or reduced in rank except for the following reasons:

. . . .

(3) Violation of any law which provided that such violation constitutes a misdemeanor or felony.

(4) Inefficiency, neglect, intemperance, immorality, disobedience of orders, or conduct unbecoming an officer.

[2] This section provides, in pertinent part:

If the person suspended, removed or reduced in rank shall demand a hearing by the commission, the demand shall be made to the commission. Such person may make written answers to any charges filed against him not later than the day fixed for hearing. The commission shall grant him a hearing which shall be held within a period of ten days from the filing of charges in writing, unless continued by the commission for cause at the request of council or the accused. (Footnote omitted.)

so severely disproportionate to the offense as to constitute an abuse of discretion by the Commission and the court.

Appellant's constitutional argument is based upon the decision of the United States Supreme Court in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487 (1985). He asserts that he had a property interest in his continuing employment under Section 1190 of the Borough Code, and that the provisions of Section 1191 of the Code, which outline the procedures to be followed in suspending, removing or reducing an officer in rank, are unconstitutional because they fail to provide the minimal due process guarantees of pre-termination notice and opportunity to respond to charges. He does not allege that the Commission failed to follow the procedures outlined in the Code.

This argument was not raised before the Commission, nor was it included in Appellant's original petition for review which was filed in common pleas court. It was not, in fact, raised until March 29, 1985, the same date that the court issued an order dismissing the appeal on the merits, when Appellant filed a petition for leave to amend his petition for review. On April 1, 1985, the court entered an order denying Appellant leave to amend, stating as the reason for the denial that the issues presented in the petition for review had already been ruled upon, and the petition for leave to amend was therefore untimely. Appellant has appealed from this April 1st order as well as from that of March 29th.

Appellant urges this Court to find that his failure to include the constitutional argument at the outset, or at least prior to March 29th, is excused because the *Loudermill* case was not decided until March 19, 1985, and prior decisions of the Pennsylvania Supreme Court and

the Third Circuit had upheld the validity of the statutory procedures involved. The Commission argues that Appellant has waived the constitutional issue by failing to raise it before the Commission or the common pleas court, and that the common pleas court properly dismissed the petition for leave to amend as untimely.

The Commission is incorrect in its assertion that a constitutional challenge must be raised at the administrative level. *See* Section 753 of the Local Agency Law, 2 Pa. C. S. §753. It must, however, be raised before the trial court, and therefore, if the court properly dismissed Appellant's petition for leave to amend, we must consider the constitutional issue as waived and cannot address it. *Reichenbach v. Civil Service Commission,* 53 Pa. Commonwealth Ct. 363, 417 A.2d 1292 (1980).

Initially, we note that neither the Pennsylvania Supreme Court case, *Gardner v. Repasky,* 434 Pa. 126, 252 A.2d 704 (1969), nor the federal case, *Olson v. Murphy,* 428 F. Supp 1057, (W.D. Pa. 1977), *affirmed,* 568 F.2d 769 (3rd Cir. 1978), cited by Appellant involved a substantive challenge to the provisions of Section 1191, and in any event, Appellant certainly would not have been precluded from *arguing* the constitutional issue. Assuming *arguendo,* that Appellant is correct in his assertion that there is no automatic cut-off point beyond which a petition for leave to amend becomes untimely,[3] Rule 1033 of the Rules of Civil Procedure states that:

---

[3] Because it was not raised by either party, we specifically leave open the question whether the Rules of Civil Procedure are applicable to an appeal from a decision of the civil service commission under the provisions of the Borough Code. *See, e.g., Pennsylvania Liquor Control Board v. Kayden Corp.,* Pa. Commonwealth Ct. , 505 A.2d 393 (1986), where we held that the Rules of Civil Procedure do not specifically govern the matters which come under the common pleas court's statutory appeal jurisdiction. *See also Matter of Borough of Forest City Abolition,* 85 Pa. Com-

A party, either by filed consent of the adverse party or by leave of court, may *at any time* change the form of action, correct the name of a party or amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted. (Emphasis added.)

This rule has long been interpreted to call for the liberal grant of leave to amend pleadings in order to allow full development of a party's theories and averments. *Beardell v. Western Wayne School District*, 91 Pa. Commonwealth Ct. 348, 496 A.2d 1373 (1985); *See also* R.C.P. No. 126.[4] The Pennsylvania Superior Court has gone so far as to say that pleadings may be amended "after pleadings are closed, while a motion for judgment on the pleadings is pending, at trial, *after judgment, or after an award has been made and an appeal taken therefrom.*" *Biglan v. Biglan*, 330 Pa. Superior Ct. 512,

---

monwealth Ct. 599, 482 A.2d 1375 (1984). But, if the rules were not applicable and the appeal were in the mode of appellate review only, the untimeliness of the Appellant's motion to amend his petition would have deprived the common pleas court of jurisdiction. Section 1191 of the Borough Code, 53 P.S. §46191; Section 753 of the Local Agency Law, 2 Pa. C. S. §753; *Pedersen v. South Williamsport Area School District*, 80 Pa. Commonwealth Ct. 292, 471 A.2d 180 (1984).

[4] Rule 126 provides as follows:

The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.

521, 479 A.2d 1021, 1025-26 (1984) (emphasis added). Nevertheless, the discretion to grant or deny leave to amend remains with the trial court, and the fundamental purpose of the rule, which is to prevent cases from turning on purely technical defects, must be kept in mind. *Id.*

The Pennsylvania Supreme Court has repeatedly stated that, despite this liberal policy, amendment will not be permitted where the effect will be to prejudice the opposing party. *Bata v. Central Penn National Bank of Philadelphia,* 448 Pa. 355, 380, 293 A.2d 343, 357 (1972), *cert. denied,* 409 U.S. 1108 (1973). In discussing the concept of prejudice, the Court has adopted the following view:

> All amendments have this in common: they are offered *later in time* than the pleading which they seek to amend. If the amendment contains allegations which would have allowed inclusion in the original pleading (the usual case), then the question of prejudice is presented by *time* at which it is offered rather than by *the substance of what is offered.* The possible prejudice, in other words, must stem from the fact that the new allegations are offered *late* rather than in the original pleading, and not from the fact that the opponent may lose his case on the merits if the pleading is allowed.

*Id.* (emphasis in original). Thus, although according to *Biglan,* petition for leave to amend can never be considered as filed absolutely *too* late, in light of the above, we think it is safe to assume that the later in the case such a petition is filed, the more it can be presumed that prejudice will flow from its grant, and the less actual prejudice need be demonstrated. Clearly, where amendment is sought after the testimony has been concluded, prejudice will always result to the extent that

the opposing party has not contemplated the subject matter of the proposed amendment in the preparation and trial of the case. At this stage of the proceedings, it may be entirely appropriate to permit an amendment which will cure a purely technical defect, or will merely conform the pleadings to the evidence already offered or admitted, *see Standard Pipeline Coating Co., Inc. v. Solomon & Teslovich, Inc.,* 344 Pa. Superior Ct. 367, 496 A.2d 840 (1985), but yet inappropriate to permit an amendment which will present an entirely new theory of recovery and raise hitherto uncontemplated issues of law and/or fact. Added to that in this case is the fact that the new argument sought to be presented revolved around a constitutional interpretation which became law well *after* the pertinent factual events had transpired. Thus, even if the amendment had been allowed and the argument addressed, the decision of whether or not to give such a new constitutional rule retroactive effect would have remained within the sound discretion of the trial court. *August v. Stasak,* 492 Pa. 550, 424 A.2d 1328 (1981). Under these circumstances, we cannot say that the trial court abused its discretion in refusing to permit the amendment. Appellant's constitutional argument must therefore be considered waived, and we will not address it further.

Appellant next argues that the factual findings of the trial court were not supported by substantial evidence in the record, as is required in a disciplinary action against a borough police officer. *Borough of Baldwin v. Schmidt,* 82 Pa. Commonwealth Ct. 587, 477 A.2d 576 (1984).

Appellant admitted in his own testimony that he intentionally pulled his loaded service revolver. He indicated that he had done so merely to check the safety. Two eyewitnesses, however, testified that he pointed the weapon directly at Bill Price's chest or abdomen.

We agree with the trial court that, whether this was done in fun or not, it constituted reckless behavior. The trial court found substantial evidence for concluding that Appellant had committed the misdemeanors of simple assault, which is defined in Section 2701(a)(3) of the Crimes Code, 18 Pa. C. S. §2701(a)(3), as an attempt by physical menace to put another in fear of imminent serious bodily injury, and reckless endangerment, which is defined in Section 2705 of the Crimes Code, 18 Pa. C. S. §2705, as reckless conduct which places or may place another in danger of death or serious bodily injury. We agree.

Furthermore, we note that Appellant could have been removed merely for "conduct unbecoming an officer," which the Commission and the court both found his behavior to be. This has been defined as any "conduct tending to destroy public respect and confidence in the operation of municipal services or affecting the morale or efficiency of the police department." *Wallace Appeal,* 90 Pa. Commonwealth Ct. 539, 496 A.2d 102 (1985). "It is not necessary that the alleged conduct be criminal in character nor that it be proved beyond a reasonable doubt." *Zeber Appeal,* 398 Pa. 35, 43, 156 A.2d 821, 825 (1959).

Appellant argues that the incident in question could not be considered to affect the public since it took place in the police office. We note, however, that the other participant in the incident was not a member of the police force, but rather was a member of the general public. We conclude that the trial court properly found that there was substantial evidence in the record to support the charges upon which Appellant was dismissed.

Finally, Appellant asserts that the penalty of dismissal is so severely disproportionate to his offense as to constitute an abuse of discretion. We agree with the

trial court that it is not. As noted by the trial court, "the borough council has the primary responsibility and discretion for determining whether or not and how a police officer should be disciplined." *Borough of Jenkintown Appeal*, 84 Pa. Commonwealth Ct. 183, 185, 478 A.2d 941, 942 (1984). This Court has held that the conduct of law enforcement personnel must be "above and beyond reproach." *Cerceo v. Darby*, 3 Pa. Commonwealth Ct. 174, 183, 281 A.2d 251, 255 (1971). Law enforcement officers are properly required to adhere to demanding standards which are higher than those applied to many other professions. *Id*. The privilege of carrying a firearm is conferred upon a police officer solely for the purpose of protecting the public. Therefore, we conclude that the misuse of this privilege by reckless and dangerous conduct such as Appellant's may properly support a dismissal.

We will affirm the trial court.

ORDER

NOW, September 18, 1986, the Orders of the Court of Common Pleas of Fayette County in the above-captioned matter, No. 280 of 1985, G.D., dated March 29, 1985 and April 1, 1985, are hereby affirmed.